UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JAMES RAND, | ) | |
| --- | --- | --- |
| Movant, | ) | |
| | ) | Case No. 08 C 6548 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION & ORDER

James Rand ("Mr. Rand") moves to vacate his sentence and conviction pursuant to 28 U.S.C. § 2255. Mr. Rand claims that his trial counsel was ineffective, that the government violated his Sixth Amendment right to a speedy trial, that the facts failed to charge an offense, and that insufficient evidence supports his conviction. Mr. Rand requests an evidentiary hearing on his claims. For the reasons stated herein, the court denies Mr. Rand's request for an evidentiary hearing and denies his motion for a writ of *habeas corpus*.

### I. BACKGROUND

The factual background surrounding the underlying convictions Mr. Rand attacks is set forth in *United States v. Rand*, 482 F.3d 943 (7th Cir. 2007).

In 2001, federal authorities had arrested Joseph Kalady ("Kalady"), a friend of Mr. Rand, for conducting a scheme in which he counterfeited U.S. birth certificates to obtain passports for illegal aliens. In order to avoid the consequences of his acts, Kalady, who had been released on bond, hatched a plot to fake his own death and flee the jurisdiction. Kalady recruited Mr. Rand to take part in the deception and asked Mr. Rand

to lure a homeless man to Kalady's home so that Kalady could kill him. Michael Kalady ("Michael"), Kalady's brother, would then report the dead body to the authorities and falsely assert that it was his brother. Michael would also ensure that the body was cremated so that no evidence of the deception remained.

A few days before Kalady was scheduled to be arraigned, Mr. Rand brought William White to Kalady's house. Kalady paid Mr. Rand for his services. Kalady murdered White the next day. Raul Rodriguez, another friend that Kalady involved his scheme, was present when Kalady murdered White. Michael later found White, who was wearing Kalady's clothes, dead in Kalady's recliner. Kalady's plan, however, unraveled quickly, largely because Kalady weighted over 400 pounds and White weighed less than half of that, causing authorities to become suspicious.

Mr. Rand was arrested. He admitted that Kalady told him to "get a homeless guy, kill him, and have that guy take Kalady's place." *Rand*, 482 F.3d at 945. Mr. Rand was charged with aiding and abetting Kalady in the murder of Mr. White in violation of 18 U.S.C. § 1512(a)(1)(C), a witness tampering statute, and conspiring to help Kalady fail to appear for arraignment in violation of 18 U.S.C. § 3146(a)(1). A jury convicted Mr. Rand of both counts. The court sentenced Mr. Rand to a life term on the first count and a concurrent five-year term on the second count.

During his direct appeal, Mr. Rand challenged only his conviction under § 1512(a). Mr. Rand challenged the applicability of § 1512(a) to the facts charged in the indictment. Mr. Rand first argued that he had not violated § 1512(a) because White was not a witness, victim or informant as required by the statute. The Seventh Circuit rejected that argument, noting that § 1512(a) does not require that a person kill a witness,

victim, or informant, but instead "makes it a federal crime to kill . . . '*another person*' . . . in order to prevent the communication of information by '*any person*' to the court." *Rand*, 482 F.3d at 946. Mr. Rand also argued that § 1512(a) applied only to efforts to conceal prior crimes and not future crimes, such as Kalady's intent to flee. The Seventh Circuit rejected that argument as well. *Rand*, 482 F.3d at 948. Mr. Rand also challenged the portion of the jury instructions that set forth the elements of the crime, but the Seventh Circuit rejected that argument. *Rand* 482 F.3d at 949.

Mr. Rand petitioned for rehearing and for rehearing *en banc*, both of which the Seventh Circuit denied. *United States v. Rand*, 493 F.3d 776 (7th Cir. 2007). The Supreme Court denied Mr. Rand's petition for writ of certiorari on November 13, 2007. *Rand v. United States*, 552 U.S. 1023 (2007).

Mr. Rand filed this motion for relief under 28 U.S.C. § 2255 in November 6, 2008, less than a year after his certiorari petition was denied by the Supreme Court. The motion is therefore timely under 28 U.S.C. § 2255(f)(1). *Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008).

## II. STANDARD OF REVIEW

Mr. Rand challenges his detention pursuant to 28 U.S.C. § 2255. Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). The federal *habeas* corpus statute provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. A district court may dismiss a § 2255 motion without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In order to allege facts sufficient to receive an evidentiary hearing, a movant must submit a sworn affidavit with specific facts supporting the movant's assertion that he is entitled to relief. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 7th Cir. 2006). The affidavit must be detailed and specific. Vague, conclusory or palpably incredible assertions are insufficient. *Id.* A district court may consider all the circumstances in the record in determining whether to grant a movant an evidentiary hearing. *Gallo-Vasquez v. United States*, 402 F.3d 793, 797 (7th Cir. 2005).

A collateral attack pursuant to § 2255 is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2005). Unless a movant demonstrates changed circumstances in fact or law, a movant may not raise issues already decided on direct appeal. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). In addition, a movant procedurally defaults constitutional claims that could have been raised on direct appeal, but were not. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008). A movant cannot raise procedurally defaulted claims unless he can demonstrate: (1) cause and prejudice; or (2) that he is "actually innocent." *Id.*

### III. ANALYSIS

Mr. Rand raises four broad claims for relief. First, he claims he was denied his Sixth Amendment right to effective assistance of counsel. Second, he claims that the government denied him his Sixth Amendment right to a speedy trial. Third, he alleges that the court lacked jurisdiction over the charges alleged in the indictment. Finally, he claims that the evidence was insufficient to sustain his conviction. The court addresses each issue in turn.[1]

*A. Ineffective Assistance of Counsel*

To prevail on an ineffective-assistance-of-counsel claim, a movant must demonstrate that his counsel's performance was objectively unreasonable and resulted in a substantial risk of prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir. 2010). Failure to establish either prong is fatal to a petitioner's claim. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010). Review of counsel's performance is highly deferential, and counsel is presumed to have acted effectively. *Hutchings*, 618 F.3d at 696. A court's review of counsel's competency must be deferential "[t]o reflect the wide range of competent legal strategies and avoid the pitfalls of review in hindsight." *Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011). In order to demonstrate that counsel's performance was deficient, a movant must provide evidence to overcome the

---

[1] The court several times granted Mr. Rand leave to supplement or expand his petition (specifically, the items filed at Docket Nos. 42, 47, 51, 53-55, 57-58, 61 65, 68-69, 71, 74-75, 78). The court has reviewed Mr. Rand's supplementary materials. Most simply are irrelevant. Often, however, Mr. Rand attempts to raise additional arguments that he failed to include in his motion. Although Mr. Rand is proceeding *pro se* and the court is aware of its obligation to construe his petition liberally, *see McGee v. Bartow*, 593 F.3d 556, 565-66 (7th Cir. 2010), the court will not address arguments made for the first time in a reply brief or in supplemental filings, *United States v. Harris*, 394 F.3d 543, 559 (7th Cir. 2005) (noting that a *pro se* prisoner waives arguments by raising them for the first time in a reply brief).

presumption that trial counsel exercised sound reason for a strategic decision. *Smith v. Gaetz*, 565 F.3d 346, 352-53 (7th Cir. 2009).

Mr. Rand raises numerous issues regarding his trial counsel's performance. Specifically, Mr. Rand claims that his trial counsel: (1) failed to object to Assistant U.S. Attorney Marcus Funk serving as counsel for the government, which denied him the opportunity to cross-examine Funk; (2) failed to challenge the government's version of how White was murdered; (3) failed to argue to the jury that it could find Mr. Rand guilty only of the conspiracy count and not the witness tampering count; (4) failed to investigate Mr. Rand's mental competence and argue that Mr. Rand's reduced competence negated any specific intent or mitigated his culpability or that Mr. Rand was not competent to stand trial; (5) failed to prepare adequately for the cross-examination of Rodriguez; (6) failed to use Kalady's confessions as exculpatory evidence; (7) failed to argue that the "aiding and abetting" jury instruction was improper; (8) failed to object to the verdict form used by the jury; (9) failed to object to the sentence imposed. Mr. Rand's claims that his trial counsel was ineffective are without merit. In fact, many lack any factual support or are frivolous.

Mr. Rand first claims that Assistant U.S. Attorney Marcus Funk improperly served as counsel for the government. Mr. Rand argues that Funk investigated Kalady's murder, examined the corpse of White, and witnessed Kalady's confession. Mr. Rand argues that because Funk served as the prosecutor in the case, he acted as "act as an unsworn witness for the government" and his trial counsel should have objected to Funk's role in the prosecution. Mr. Rand's argument, however, is frivolous. On January 31, 2005—well before the November 2005 trial date—the government designated

Matthew Schneider as lead counsel and informed the clerk of the court that Funk should be removed from the case's service list. (*See* Attorney Designation, Case No. 01 CR 1069, ECF No. 315). Quite simply, trial counsel had no reason to move to disqualify Funk because the government had replaced him months before trial. In his reply, Mr. Rand suggests that the entire U.S. Attorney's Office for the Northern District of Illinois should have recused itself. Even if the court were to allow Mr. Rand to develop an argument for the first time in his reply brief, he offers no reasonable explanation why the court should have barred the U.S. Attorney's Office simply because of Funk's earlier involvement in the case.

Mr. Rand next argues that trial counsel failed to challenge White's cause of death. At trial, Rodriguez testified about White's murder. According to Rodriguez, White was sitting in a recliner when Kalady jumped on him. Rodriguez further testified that he held White's wrists and that Kalady stuffed a robe in White's mouth, put a bag over his head, and pinched White's nose. (Tr. 236-38). In addition, an assistant medical examiner and forensic pathologist corroborated Rodriguez's testimony, testifying that White died from suffocation. The medical examiner further testified that he observed abrasions on White's nose and bruises on his chest that were consistent with suffocation. (Tr. 364-65). Mr. Rand's trial counsel cross-examined Rodriguez, attacking his credibility by pointing to the plea agreement he made with the government. (Tr. 239-42). Mr. Rand's trial counsel also cross-examined the medical examiner, eliciting testimony about possible blunt force trauma to White's head. (Tr. 368-69). Despite the formidable evidence in the record that Kalady suffocated White, Mr. Rand argues, without any explanation, that it

would have been "impossible" for Kalady to have suffocated White.² Mr. Rand's conclusory assertion is devoid of specific facts in support, and therefore is not sufficient to suggest that Mr. Rand's trial counsel was ineffective in failing to pursue an argument concerning the method of White's murder. *Kafo*, 467 F.3d at 1067-68.

Mr. Rand's next two arguments are factually inaccurate. Mr. Rand argues that trial counsel was ineffective because he failed to argue that Mr. Rand was guilty only of violating 18 U.S.C. § 3146(a)(1) (conspiring to help Kalady avoid his court hearing) and not 18 U.S.C. § 1512(a)(1)(C) (witness tampering). Mr. Rand's trial counsel, however, did present such an argument to the jury during closing arguments. (Tr. 485). Mr. Rand also argues that trial counsel was ineffective in failing to investigate and explore his mental competence. Trial counsel, however, moved for a competency and sanity examination. (*See* Mot. for Examination for Competency and Sanity, Case No. 01 CR 1069, ECF No. 337). The court granted that motion. (*See* Minute Order, Case No. 01 CR 1069, ECF No. 338). Contrary to Mr. Rand's argument, his trial counsel did explore possible defense strategies concerning Mr. Rand's mental competence.³

Mr. Rand argues that trial counsel did not effectively cross-examine Rodriguez. In support, Mr. Rand points to two possible avenues of impeachment that trial counsel did not pursue. First, Mr. Rand points to Rodriguez's motion to suppress statements he made to the Chicago police shortly after his arrest. Rodriguez's motion was based in part

---

² Mr. Rand suggests that there were needle marks on White's arms. Theoretically, Mr. Rand might have argued that Kalady did not suffocate White, but instead have argued that White died from his own drug use. Mr. Rand, however, scuttles that theory, stating in his motion that White was not a drug user. Rather, Mr. Rand in his supplementary materials suggests that he believes Kalady injected White with some sort of paralytic drug. Even if Kalady's supposition were true, it does not impact Kalady's or Mr. Rand's culpability for White's murder. In any event, the medical examiner found no evidence of drugs or other poisons in White's body. (Tr. 366).

³ Trial counsel could not have pursued Mr. Rand's mental competence at sentencing because Count I provided for a mandatory life sentence. 18 U.S.C. § 1512(a)(3)(A).

8

on an assertion set forth in an affidavit that he had not been given *Miranda* warnings. Although the court denied Rodriguez's motion to suppress his statement to the police in large part because his claim was too vague, it noted that a videotape of Rodriguez's interrogation by police belied his claim that he was not given *Miranda* warnings. (*See* Order, Case No. 01 CR 1069, ECF No. 217). Mr. Rand argues that his attorney was ineffective in not using Rodriguez's false statement that he was not given *Miranda* warnings to undermine his credibility.

Where a line of questioning potentially bolsters a witness's credibility by providing him an opportunity to reiterate prior consistent statements, counsel is not ineffective in choosing to forego that line of questioning. *Fish v. United States*, 34 F.3d 488, 494 (7th Cir. 1994). That is precisely what happened here. Even though trial counsel may have been able to demonstrate that Rodriguez lied in an effort to suppress a statement, in order to do so he necessarily would have drawn the jury's attention to evidence that Rodriguez had given a statement to the police that corroborated his trial testimony. Moreover, Rodriguez implicated himself in the statement to the police and so had no reason to lie. Because trial counsel might have bolstered, not diminished, Rodriguez's credibility by pursuing such a line of questioning, trial counsel was not deficient in choosing to steer clear of this line of questioning.

In addition, Mr. Rand also points to inconsistencies that he perceives in notes taken by a police officer during Rodriguez's statement. Mr. Rand claims the notes reveal that Rodriguez admitted to the police that he did not know Mr. Rand prior to the murder of White and that Rodriguez admitted to the police that he observed Mr. Rand exiting Kalady's house on the day of the murder. Mr. Rand argues that these two admissions are

9

inconsistent and thus prove that Rodriguez was lying to the police. In support, Mr. Rand attaches as Exhibit 2 to his motion the relevant portion of the police officer's notes. The portion of the police officer's notes, however, do not support his argument. Nowhere in the notes does the officer indicate that Rodriguez told the police that he did not know Mr. Rand prior to White's murder. Because the factual basis of Mr. Rand's claim is not supported by the evidence that he submits, this portion of his ineffective assistance of counsel claim lacks merit.

Mr. Rand next argues that trial counsel failed to introduce evidence of Kalady's confession to White's murder. He claims that the confession would have exonerated him. Mr. Rand fails to identify any statement made by Kalady that would demonstrate his innocence. Instead, Mr. Rand speculates that Kalady's confession exposes a conspiracy between Kalady and Funk, the Assistant U.S. Attorney formerly assigned to Kalady's case. Mr. Rand's speculation is fanciful, to say the least.[4] As noted earlier, a movant must offer detailed and specific allegations to support a *habeas corpus* claim. *Kafo*, 467 F.3d at 1067. Mr. Rand's conclusory assertion that Kalady's confession would have exonerated him cannot support an ineffective assistance of counsel claim.

Mr. Rand further argues that trial counsel erred in failing to object to the court's aiding and abetting instruction and in failing to object to the verdict forms. Mr. Rand's arguments are non-starters. The court's instruction mirrors the Seventh Circuit pattern jury instruction 5.06. (*See* Jury Instructions, Case No. 01 CR 1069, ECF No. 367 at 17). With regard to the verdict forms, Mr. Rand argues that because both counts were included on one verdict form, the jury's verdict was ambiguous. The jury had three

---

[4] In one of his many supplements to his motion, Mr. Rand attaches a published article about Funk's military and legal service as proof of the conspiracy between Kalady and Funk. The article, however, does not support Mr. Rand's fanciful claim and has no relevance to any issue before the court.

10

verdict forms to choose from: (1) find Mr. Rand not guilty as charged in the indictment; (2) find Mr. Rand guilty as charged in the indictment; and (3) find Mr. Rand guilty of one count but not guilty as to another. (*See* Jury Instructions, Case No. 01 CR 1069, ECF No. 367 at 32-34). The jury returned the form indicating that it found Mr. Rand guilty as charged in the indictment. (*See* Jury Verdict, Case No. 01 CR 1069, ECF No. 371). Mr. Rand offers no explanation whatsoever as to why the jury may have been confused by the verdict forms.

Finally, Mr. Rand claims that trial counsel failed to object to the sentence imposed. Mr. Rand argues that trial counsel should have objected to the court's imposition of the sentence of "life without parole" rather than simply, "life." Like many of Mr. Rand's arguments about his trial counsel's performance, Mr. Rand's argument misrepresents the prior proceedings and the record. The court sentenced Mr. Rand to a "total uninterrupted term of Life." (*See* Judgment, Case No. 01 CR 1069, ECF 408; Transcript, Case No. 01 CR 1069, ECF 415 at 16).

The bulk of Mr. Rand's claims regarding his trial counsel's performance are contrary to the record before the court. Those that are not lack merit. Because Mr. Rand has failed to demonstrate that his trial counsel's performance was deficient, he is not entitled to *habeas corpus* relief on those claims.

B. *Speedy Trial Act*

Mr. Rand argues that the delay of over three years from the time of his arrest and arraignment (May 2002) and his trial (November 2005) violated his Sixth Amendment right to a speedy trial. Mr. Rand suggests that he was prejudiced by the delay because: (1) Kalady died during the delay and could not exonerate him with his testimony; and (2)

the remaining co-defendants accepted plea agreements and testified against him. The court need not reach the merits of Mr. Rand's argument because he has procedurally defaulted it. Mr. Rand failed to raise his Sixth Amendment argument on direct appeal, and so must demonstrate both cause and prejudice to excuse his default. *Torzala*, 545 F.3d at 522.

Mr. Rand makes no direct effort to demonstrate cause and prejudice for his procedural default. In his reply, Mr. Rand notes that his trial counsel never raised his right to a speedy trial. Ineffective assistance of counsel can constitute cause for failure to raise an issue. *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994). To excuse his procedural default, however, Mr. Rand must demonstrate that his *appellate* counsel was ineffective in failing to raise the issue during his direct appeal. *See Sanders v. Cotton*, 398 F.3d 572, 580 (7th Cir. 2005) (finding cause for procedural default where appellate counsel failed to raise issue on direct appeal). Even construing Mr. Rand's claim liberally, he makes no argument that appellate counsel's failure to raise a Sixth Amendment claim on direct appeal provides cause to excuse his procedural default.

Even if he had made such an argument, the court would not be convinced that Mr. Rand was prejudiced by his appellate counsel's failure to raise a Sixth Amendment argument. The record reflects that the co-defendants presented numerous pre-trial motions and requests for continuances after Mr. Rand was first arraigned. Mr. Rand's trial counsel never objected to the continuances nor demanded an immediate trial. In fact, Mr. Rand's trial counsel sought leave to file pretrial motions on Mr. Rand's behalf as late as January 25, 2005. Although Mr. Rand implies that trial counsel was ineffective in failing to demand trial, he does not explain why trial counsel's decision to await

resolution of Mr. Rand's codefendants' pretrial motions or pursue pretrial motions on behalf of Mr. Rand created a meritorious Sixth Amendment issue that should have been raised on direct appeal. *See, e.g., United States v. O'Conner*, 656 F.3d 630, 643 (7th Cir. 2011) (holding that where defendant sought continuances, moved for others, and did not seek to sever case from that of co-defendants, delay of 1,229 days did not cause actual prejudice). Because Mr. Rand cannot demonstrate that appellate counsel's performance was deficient or that he was prejudiced by appellate counsel's failure to raise a Sixth Amendment argument on direct appeal, the court will not excuse the procedural default of his Sixth Amendment claim.

### C. Deficient Indictment

Mr. Rand next argues that the indictment failed to charge facts sufficient to state a violation of 18 U.S.C. § 1512(a)(1)(C). The appellate court, however, decided this issue on direct appeal. *Rand*, 482 F.3d at 948-49. Because the appellate court resolved this issue on direct appeal, Mr. Rand cannot raise this claim in his § 2255 motion. *Olmstead*, 55 F.3d at 39.

### D. Sufficiency of the Evidence

Finally, Mr. Rand argues that the evidence produced at trial was insufficient to support a guilty verdict. The government suggests this argument was resolved on direct appeal, noting that the appellate court stated that "Kalady clearly murdered White" and "Rand clearly aided and abetted that nefarious act." *Rand*, 482 F.3d at 946. The government, however, reads too much into the appellate court's language. The appellate court never was asked to review the sufficiency of the evidence. Rather, Mr. Rand's primary argument on appeal was that § 1512(a) did not apply to the facts. Indeed, if the

government had proven only that Kalady murdered White and that Mr. Rand aided and abetted that act, a sufficiency of the evidence argument would have prevailed because the government also had to prove that White was killed in order to prevent a communication to a law enforcement official or judge. *Rand*, 482 F.3d at 949. Whether the evidence was sufficient to support a conviction simply was not an issue on appeal.

By failing to raise the issue on direct appeal, Mr. Rand procedurally defaulted the argument. Although the government does not argue that Mr. Rand procedurally defaulted the argument, a district court may consider *sua sponte* whether a movant has procedurally defaulted a claim unless the government has affirmatively waived the issue. *Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988); *see also Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (discussing waiver of procedural default in context of 28 U.S.C. § 2254 petitions); *Pierce v. United States*, 976 F.2d 369, 370 n.1 (7th Cir. 1992) (discussing waiver of procedural default in context of § 2255 motions). Mr. Rand failed to raise a sufficiency of the evidence claim on direct appeal and offers no explanation why no such claim was raised. The court holds that he therefore has procedurally defaulted this claim.

### III. CONCLUSION

The court declines to review Mr. Rand's claims based on the sufficiency of the evidence or his Sixth Amendment right to a speedy trial because he has procedurally defaulted them. The court may not review Mr. Rand's claim that the indictment fails to allege facts sufficient to state a violation of § 1512(a) because the appellate court resolved that claim during his direct appeal. None of Mr. Rand's ineffective-assistance-of-counsel claims have merit. The court therefore denies Mr. Rand's motion to vacate his conviction and sentence.

Pursuant to 28 U.S.C. § 2253, the court must determine whether to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The court may issue such a certificate only if the applicant has made a substantial showing of the denial of a constitutional claim. 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Mr. Rand's ineffective assistance of counsel claims are so clearly contrary to the factual record before the court that no reasonable jurist could debate their resolution. In addition, no reasonable jurist could debate whether Mr. Rand's remaining claims were procedurally defaulted or not cognizable on *habeas corpus* review. The court therefore declines to issue a certificate of appealability.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 18, 2012